CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 24 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEMARCUS MANDELL BROWN, | No. 7:12-cr-00057 |
| Petitioner, | MEMORANDUM OPINION |
| v. | By: Michael F. Urbanski |
| UNITED STATES OF AMERICA | Chief U.S. District Judge |

Demarcus Mandell Brown, a federal inmate, has filed, through counsel, a comprehensive amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Brown argues that he is entitled to relief based on various claims of ineffective assistance of counsel. Brown also argues that his sentence is unconstitutional following the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), because he no longer qualifies as an armed career criminal under the Armed Career Criminal Act ("ACCA") and a career offender under United States Sentencing Guideline ("U.S.S.G.") § 4B1.1. Although initially opposing Brown's request, the government recently has joined Brown's motion. After reviewing the entire record and following two hearings on various issues related to the § 2255 motion, the court agrees with the parties that Brown's motion should be granted.

---

[1] Brown was sentenced by United States District Judge Samuel G. Wilson. Judge Wilson has retired and the motion has been assigned to the undersigned United States District Judge.

1

I.

On July 26, 2012, a federal grand jury charged Brown with four counts of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1), one count of possessing a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c), and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). Brown was charged after a confidential informant ("CI") purchased small amounts of cocaine from Brown, resulting in a search warrant of Brown's apartment, where a firearm was found.

Following his arraignment, counsel for Brown filed a motion to suppress evidence that was recovered in the course of the execution of the search warrant. Mot. at 1-4, ECF No. 16. The court held a hearing in accordance with Franks v. Delaware, 438 U.S. 154 (1978), at which the detective who applied for the search warrant and provided the affidavit to the court in support of the search warrant, testified. ECF No. 23. The detective did not disclose that that the CI subsequently had been terminated from police employment for lying about the circumstances of another drug transaction in a separate case. The information regarding the CI was not provided to the United States Attorney's Office and was, therefore, not provided to the defense in advance of the Franks hearing.

Before the court ruled on the suppression motion, Brown filed a motion for new counsel. ECF No. 29. The court granted the motion and appointed Gary Lumsden (hereinafter "Defense Counsel") to represent Brown. Defense Counsel moved to continue the trial and reopen the Franks hearing. The court granted the motions and on December

2

13, 2012, received additional evidence. At the second suppression hearing, the detective testified:

> This was an informant that I had used on a very regular basis, and had prior and after done multiple purchases of – multiple investigations, all involving drugs, with the same informant. Everything from this informant has been found to be truthful and consistent with what they've told me with my investigation.

Supp. Hr'g Tr. at 60, ECF No. 66. No concern as to the CI's reliability was disclosed at the hearing, and the court denied the suppression motion. Brown filed an interlocutory appeal, requesting review of the court's decision, but ultimately moved to voluntarily dismiss the appeal. ECF No. 63. Brown's trial was scheduled for April 2, 2013.

At 6:16 pm on March 30, 2013 — the Saturday night two days before trial — the government sent an email to Defense Counsel apprising him of reliability problems with the CI arising from a controlled drug sale at the Caru Apartments. The email indicated that the CI who claimed to have made drug purchases from Brown had made some false statements to law enforcement in connection with that drug transaction. March 30, 2013 email at 1, Ex. 1 at 1, ECF No. 210-1. As these facts concerning the reliability of the government's CI were both favorable to Brown and material, the government was required to disclose them under Brady v. Maryland, 373 U.S. 83, 87 (1963).

At 6:27 am the following morning, Sunday, March 31, 2013, Defense Counsel responded via email that he "was aware of the 'mishap' at Caru . . . but I would be interested in the full report." Id. Somewhat later that day, Defense Counsel met with Brown, but apparently the topic of the "Caru mishap" involving the CI did not come up. At 7:29 pm

that Sunday night, the government sent Defense Counsel an email attaching the full report regarding the CI. Id. Defense Counsel did not respond to that email.

The next day, April 1, 2013 — the day before the trial was scheduled to begin — Defense Counsel met with Brown for approximately three and a half hours. There is no indication that Brown was advised as to the reliability issue with the potentially compromised CI. Rather, the discussion focused on a proposed plea agreement. The plea required Brown to plead guilty to one count of cocaine distribution and both firearm-related charges in exchange for a fixed term of imprisonment under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Brown agreed to plead guilty and signed his name to the plea agreement as did Defense Counsel.

Prior to the start of trial on April 2, 2013, Brown entered a guilty plea and the court conducted a Rule 11 hearing. As presented in open court and docketed, the typed plea agreement contained certain handwritten changes. See Plea Agree., ECF No. 82. In particular, the typed term of the sentence, 264 months, was changed to 285 months, and the counts subject to the plea were revised from Counts One, Five and Six to Counts Four, Five and Six. Further, while the typed agreement noted that Brown would be subject to an enhanced sentence under the ACCA if the court found he had three prior convictions for serious drug offenses or violent felonies, the handwriting concedes the application of the

4

ACCA.[2] At the April 2, 2013 hearing, the court accepted Brown's guilty plea to Counts Four, Five and Six and found him guilty of those counts.

Later that afternoon, Defense Counsel checked his email and read the full report regarding the CI. Defense Counsel Dep. Ex. 1 at 75, ECF No. 204-1. Defense Counsel immediately visited Brown in custody and told him about the issue with the CI. Brown was "furious" and told Defense Counsel that he wanted to withdraw his guilty plea. Id. at 77. Defense Counsel testified that he "had to file a motion [withdrawing Brown's guilty plea]," id., but the docket indicates he did not do so. Instead, on August 14, 2013, roughly four and a half months after entry of his guilty plea and on the eve of his sentencing hearing, Brown filed a pro se motion to withdraw his guilty plea. ECF No. 89.

A week later, on August 21, 2013, the court held a sentencing hearing and addressed Brown's motion to withdraw. Brown explained that after his guilty plea he learned that the CI had lied and been terminated. Sent. Hr'g Tr. at 12, ECF No. 128. In addition, he stated that at trial his defense would have been that he never sold drugs to the CI and that she had lied about purchases from him. Id. at 5-10. The court asked Defense Counsel whether there was "any insight" he could provide regarding the March 30, 2013 communication from the government, to which Defense Counsel responded, "No, Your Honor." Id. at 20.

---

[2] The circumstances under which the handwritten changes to the plea agreement were made are unclear. Specifically, while these changes were initialed by counsel, they do not appear to have been initialed by Brown. At the guilty plea hearing, the court made reference to the handwritten changes and initials and asked Brown if he read the entire agreement. Brown stated that he had done so. Plea Hrg. Tr. At 9, ECF No. 91. The court took a recess for one and one half hours to allow Brown confer with his counsel about the plea agreement. Id. at 8. The court was very clear with Brown that if accepted, the Rule 11(c)(1)(C) plea agreement required the court to sentence him to 285 months. Id. at 6, 12, 14, 15 and 16. In any event, the issue of these handwritten changes to the plea agreement is not material to the court's determination of ineffective assistance in this case.

5

However, Defense Counsel went on to vigorously argue that the Brady material should have been disclosed prior to the Franks suppression hearing, during which the detective testified that the CI was reliable, and that Brown should be allowed to withdraw his guilty plea. Id. at 24-25. The court denied Brown's motion to withdraw, noting that the government had provided the Brady material to defense counsel prior to the guilty plea hearing, and that Brown had waited four and a half months before filing a motion to withdraw, among other reasons. Id. at 29-32.

The court sentenced Brown to 285 months, in accordance with the Rule 11(c)(1)(C) plea agreement. Id. at 35. On August 29, 2013, Brown filed a motion for reconsideration of the order denying his motion to withdraw, which was denied. ECF No. 102, 104. On September 3, 2013, Defense Counsel moved to withdraw as counsel, which the court granted. ECF No. 106, 107. Brown appealed his conviction and sentence, but the United States Court of Appeals for the Fourth Circuit affirmed. United States v. Brown, 576 F. App'x 145, 149 (4th Cir. 2014) (unpublished). Brown filed a petition for a writ of certiorari, which the United States Supreme Court denied. Brown v. United States, 135 S. Ct. 312 (2014).

On October 7, 2015, Brown filed a motion, pursuant to 28 U.S.C. § 2255, requesting relief based on claims of ineffective assistance of counsel, that his guilty plea was not knowing and voluntary, and that his sentence was improper because he should not have been classified as an armed career criminal. ECF No. 145. Pursuant to Standing Order 2015-5, the Federal Public Defender was appointed to represent Brown with regard to his

§ 2255 motion. Habeas counsel filed a comprehensive amended § 2255 motion alleging that Brown's sentence was unconstitutional following the Supreme Court's decision in Johnson, and that he had received ineffective assistance of counsel. ECF No. 172. The government filed a motion to dismiss and a supplemental motion to dismiss, arguing that Brown was not entitled to relief under Johnson and that counsel's representation did not rise to the level of ineffective assistance, and challenging various factual assertions by Brown. ECF No. 180.

Because of the factual disputes, the court scheduled an evidentiary hearing. In preparation, the government filed a motion asking the court to allow it to communicate with Defense Counsel, and to find that the attorney-client privilege between Defense Counsel and Brown had been impliedly waived by Brown's § 2255 motion. Mot. at 3-4, ECF No. 191. Brown's habeas counsel, in response, filed a motion requesting that the court authorize her to take a deposition of Defense Counsel and requiring Defense Counsel to turn over his case file. Mot. at 2, ECF No. 194. Following a hearing, the court granted the motion and Defense Counsel's deposition was taken. ECF No. 198.

At his deposition, Defense Counsel testified that he did not see the email from the government regarding the CI until later that day, after the guilty plea hearing. Defense Counsel Dep. Ex. 1 at 71, ECF No. 204-1. After he read the email, Defense Counsel testified that he went to the jail and told Brown what he had learned about the CI. As this was after Brown had entered his guilty plea, Brown asked counsel to file a motion to withdraw his plea. Defense Counsel did not file such a motion. Id. at 77-78.

Based on the deposition, the government asked the court to inquire into a possible conflict of interest involving habeas counsel. This motion was based on Defense Counsel's testimony that during his representation of Brown, he had been in limited contact with the Federal Public Defender's Office, where Brown's habeas counsel works, to obtain some legal research. Also, Defense Counsel had represented Brown's habeas counsel in a separate and unrelated personal matter a few years before. Mot. at 1-2, ECF No. 203. Brown's habeas counsel denied any conflict of interest, and asserted that the government might suffer from a conflict of interest because she planned to call current and former Assistant United States Attorneys to testify at the evidentiary hearing. Resp. at 1-2, ECF No. 204.

On May 24, 2017, the court held a hearing regarding the conflict of interest issue. At the hearing, the government represented that it and Brown's habeas counsel had reached a global resolution of Brown's § 2255 motion.

The government subsequently filed a memorandum in support of Brown's § 2255 motion, requesting that the court grant Brown's motion and permit Brown to withdraw his guilty plea. Mem. in Supp. of Pet. Mot. at 1, ECF No. 210. In support, the government noted that the email evidence proved that Defense Counsel received the information regarding the CI before Brown's guilty plea hearing, and he replied via email that he was aware of the information. Nonetheless, Defense Counsel testified that he did not tell Brown about the issue with the CI until after the guilty plea hearing. The government also highlighted the fact that Defense Counsel never filed a motion to withdraw Brown's guilty plea despite Brown's request that he do so. Moreover, at the sentencing hearing, Defense

8

Counsel did not give the court any insight into the circumstances of Brown's request. Taken together, the government admitted that these "failures constrain the government's ability to contest Brown's claim of ineffective assistance of counsel." Id. at 5. Habeas counsel filed a reply, requesting that the court adopt the government's proposed resolution of Brown's § 2255 motion. ECF No. 211.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Brown bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## III.

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). The proper vehicle for a defendant to raise an ineffective assistance of counsel claim is by filing a § 2255 motion. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted; "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Accordingly, in order to establish a viable claim of ineffective assistance of

counsel, a defendant must satisfy a two-part test showing both that counsel's performance fell below an objective standard of reasonableness and establishing prejudice due to counsel's alleged deficient performance. Id. at 687. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). However, counsel's performance must be judged "on the facts of the particular case" and assessed "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In the context of a plea agreement, where a defendant claims ineffective assistance, the prejudice prong is satisfied where the defendant shows that "there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The court must conclude, in this very unusual case, that Brown's counsel provided ineffective assistance with regard to the circumstances surrounding his guilty plea and that Brown was prejudiced by counsel's conduct.[3]

### 1. Ineffective Assistance of Counsel.

---

[3] Because the court concludes that Brown is entitled to relief based on ineffective assistance of counsel, it need not address his additional claim that he no longer qualifies as an armed career criminal or a career offender following Johnson.

10

Defense Counsel's representation fell below an objective standard of reasonableness because he had an obligation: (1) to provide the Brady evidence to Brown prior to the Rule 11 hearing so that Brown could make an informed decision regarding whether to plead guilty or proceed to trial; and (2) to timely file a withdrawal-of-plea motion after Defense Counsel disclosed the Brady material and Brown asked him to filed such a motion.

First, the evidence establishes that Defense Counsel received the March 30, 2013 email indicating reliability problems with the CI and responded to it early on March 31, 2013. In his March 31, 2013 response, Defense Counsel stated that he was aware of the "mishap" involving the CI and was interested in receiving the full report. Defense Counsel met with Brown later in the day, apparently without disclosing the revelation about the CI in the late-breaking email from the government. The following evening, the government sent Defense Counsel the full report on the CI. Defense Counsel testified that he did not check his email and so did not see it until after the guilty plea a day and a half later.

Counsel has an obligation to inform a defendant about material exculpatory or impeachment evidence, in order for the defendant to make an informed decision about whether to proceed to trial or accept a plea. See, e.g., United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (concluding that a defendant has the right to be reasonably informed in order to make the decision about whether to proceed to trial or plead guilty). To be sure, the government bears some responsibility for providing the information about the CI on the eve of trial. Although the government's disclosure was eleventh-hour and compressed the time within which counsel was required to act, Defense Counsel was required to inform Brown of

11

the reliability problem with the CI prior to his guilty plea. Defense Counsel's email confirms that he was aware of the "mishap" with the CI, yet Brown was not clued in until after he entered his guilty plea. Although the timing was tight, Defense Counsel had an obligation to apprise Brown of the problem with the CI, and his failure to timely do so falls "below an objective standard of reasonableness." Strickland, 466 U.S. at 688.[4]

Second, Defense Counsel's failure to file a motion to withdraw Brown's guilty plea after Brown instructed him to do so on April 2, 2013 also constiutes ineffective assistance. Defense Counsel visited Brown at the jail on the afternoon of April 2, 2013 — after the guilty plea hearing had been held — and was instructed by Brown to file a motion to withdraw his guilty plea. While acknowledging this instruction, Defense Counsel appears never to have filed a motion to withdraw Brown's guilty plea. Instead, Brown filed a pro se motion to withdraw his guilty plea on August 14, 2013, a week before sentencing and more than four months after his guilty plea. Compounding the problem is the fact that when Defense Counsel was asked by the court whether there is "any insight you can give concerning this March 30, 2013 letter," Defense Counsel offered nothing. As a consequence, the court concludes that Defense Counsel's representation was deficient in this regard as well. Strickland, 466 U.S. at 687.[5]

---

[4] At deposition, Defense Counsel stated that he was not aware of the problem with the CI until after the guilty plea when he returned to his office and had a chance to look at his email. While this account is consistent with Defense Counsel's conduct in running back over to the Roanoke City Jail to tell Brown about the CI, it is undermined by the fact that Defense Counsel replied to the government's email on March 31, 2013, saying he was aware of the "mishap" with the CI and expressing interest in the full report. In any event, the email chain does not suggest that Defense Counsel saw the full report on the CI until after the guilty plea on April 2, 2013.

[5] Brown also has raised concerns about the sale of his car, which is the subject of a separate investigation by the United States Attorney. Because the issue of the disposition of Brown's car is being separately addressed and does not bear

Brown's prejudice is manifest. Id. A defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 59. To meet this requirement, Brown must establish both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so. United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). Brown asserted at his sentencing hearing that he would not have pleaded guilty had he known of the Brady material, and he makes the same assertion in his § 2255 motion. Sent. Hr'g Tr. at 8-9, ECF No. 128; Comp. Am. § 2255 Mot. at 26, ECF No. 172. In addition, because, as the government admits, the "case against Brown relied in part" on the CI, who was later terminated from police employment for lying, it would have been objectively reasonable to proceed to trial with the substantial impeachment evidence against the CI. Strickland, 466 U.S. at 694. Therefore, the court concludes that Brown has established that he received ineffective assistance of counsel. Id.

### 2. Withdrawal of Guilty Plea.

Because Brown received ineffective assistance, the court must determine the relief to which he is entitled. Both parties to this case ask the court to allow Brown to withdraw his guilty plea. The government submitted "that fair and just reasons would permit him to

---

directly on counsel's failure to disclose the CI's reliability problem and the failure to timely file a motion to withdraw Brown's guilty plea, the court will not address it in this § 2255 opinion. In fact, at the May 24, 2017 hearing, all counsel agreed that the claim of ineffective assistance concerning the guilty plea provided independent and sufficient grounds for habeas relief separate and apart from the issue of Brown's car. May 24, 2017 Hrg. Tr. at 27-29, 35-36, 39-42, ECF No. 217.

withdraw his pleas of guilty, and his convictions and sentences should be vacated." Memo. in Supp. of Pet. Mot. at ¶ 16, ECF No. 210. The court agrees.

A defendant does not have an unqualified right to withdraw a guilty plea. United States v. Moore, 931 F.3d 245, 248 (4th Cir. 1991). Nonetheless, after pleading guilty, but before sentencing, a defendant may withdraw a plea if he demonstrates "a fair and just reason for" withdrawal. Fed. R. Crim. P. 11(d)(2)(B). In determining whether a fair and just reason exists, courts consider a number of factors, including: "(1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources." Id. The first factor—whether the plea was knowingly and voluntarily made—is the most important in making such a determination. United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003).

Here, the bulk of the factors weigh in favor of granting a withdrawal. Brown presented credible evidence that his plea was not knowing or voluntary, as the government concedes. In order for a plea to be knowing and voluntary, the defendant must understand the law in relation to the facts. United States v. Smith, 640 F.3d 580, 592 (4th Cir. 2011). However, as explained above, Brown was not aware of the CI's reliability problem at the time of his guilty plea.

With regard to the second factor, Brown pled guilty on April 2, 2013 during a properly conducted Rule 11 hearing. At that time, he agreed that he was pleading guilty because he was, in fact, guilty. Plea Hr'g Tr., ECF No. 91, at 19. As such, this factor weighs against allowing Brown to withdraw his guilty plea.

The third factor weighs in Brown's favor. Brown did not file a motion to withdraw his guilty plea until four and a half months after his plea hearing. However, he told his counsel that he wanted to withdraw his guilty plea the day of his plea hearing, after learning of the Brady material. In his deposition, Defense Counsel admitted that Brown told him that he wanted to withdraw his guilty plea and to "file a motion to that effect." Defense Counsel Dep. Ex. 1 at 77, ECF No. 204-1. Nonetheless, Defense Counsel did not do so.

In addition, the fourth factor supports withdrawal. As explained above, while the timing of the government's disclosure severely constrained the window within which counsel could act, Defense Counsel's failure to disclose the information regarding the CI prior to the guilty plea hearing left Brown without the assistance of competent counsel at the time his plea was taken. In addition, no explanation was provided for counsel's failure to file a motion to withdraw the guilty plea as instructed or to explain the circumstances to the court at sentencing.

Finally, the fifth factor also weighs in Brown's favor. The government bears some responsibility for the cascading series of events given its eleventh-hour disclosure of the CI's reliability problem. In any event, the government recognizes that the unusual circumstances of this case justify a withdrawal of Brown's guilty plea and has consented to that withdrawal.

Because the government supports the grant of Brown's § 2255 motion, it clearly does not consider any prejudice that it might face to be significantly onerous.

Because the <u>Moore</u> factors support the conclusion that Brown had "a fair and just reason for" withdrawing his guilty plea, the court will allow Brown to do so. Fed. R. Crim. P. 11(d)(2)(B).

## IV.

The government filed a motion to inquire into a possible conflict of interest, bringing to the court's attention the fact that habeas counsel has had some contact with Defense Counsel over the course of many years. ECF No. 203. At his deposition, Defense Counsel stated that in 2010 he had represented habeas counsel in an unrelated proceeding. Also, in 2012 and 2013, during his representation of Brown, Defense Counsel contacted habeas counsel's office a few times to obtain legal research. Habeas counsel denied any conflict of interest, but raised one of her own, asserting that the government might have a conflict of interest because members of Brown's prosecution team were witnesses to the ineffective assistance of counsel. ECF No. 204. On May 24, 2017, the court held a hearing to address these issues.

The court concludes that no conflict of interest exists, either on the part of habeas counsel or the government. "The effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." <u>United States v. Tatum</u>, 943 F.2d 370, 375 (4th Cir. 1991). The defendant must show an actual conflict of interest, such

that counsel's representation of the defendant has been negatively affected. Id. There has been no evidence presented that the performance of Brown's habeas counsel has been compromised by her limited contact with Defense Counsel. Moreover, at the hearing, Brown knowingly and voluntarily waived any potential conflict of interest arising from habeas counsel's continued representation of him. Nor is there any potential appearance of impropriety on the part of the government. Simply because a part of Brown's original prosecution team may have been called to testify as to the factual circumstances of Brown's plea does not disqualify the entire U.S. Attorneys' office. Therefore, the dueling motions raising conflict of interest questions will be denied.

## V.

Finally, at a hearing conducted on May 24, 2017, the parties indicated that a global resolution of the matter had been reached pursuant to which Brown would enter into a new plea agreement with the government. May 24, 2017 Hrg. Tr. at 3, 7-10, 12, 38, ECF No. 217; Mem. in Supp. of Pet. Mot. at ¶ 16, ECF No. 210. Subsequent to that hearing, however, the court was advised that Brown "has changed his mind, and he is emphatically not interested in pleading guilty. He wants to go to trial." Mem. in Supp. of Pet. Mot. at ¶ 16, ECF No. 210; Pet. Reply to Government's Mem. 2, n.1, ECF No. 211. As a result, the government has suggested that inquiry be made of Brown pursuant to Lafler v. Cooper, 566 U.S. 156 (2012), and Missouri v. Frye, 566 U.S. 133 (2012), to ascertain knowledge of and decision not to accept the new plea agreement and proceed to trial. Id. at 5. Such a hearing will be scheduled.

## VI.

For the reasons stated, the court will grant Brown's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and allow Brown to withdraw his guilty plea. An appropriate order will be entered this day

**ENTER:** This 24th day of July, 2017.

/s/ Michael F. Urbanski
_____
Chief United States District Judge